## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| JOHN SMITH, | ) | CIVIL ACTION NO. |
| Plaintiff, | ) |  |
| v. | ) |  |
| CIRCLE K STORES, INC., | ) | _____ |
| Defendant. | ) |  |

## COMPLAINT

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.      Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.      Venue is proper in this Court, the United States District Court for the Western District of Tennessee, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Western District of Tennessee.

3.      Plaintiff, John Smith, was diagnosed with diabetes forty-one years ago. As a result of his diabetes, Mr. Smith consequently had a double amputation, losing both of his legs. Mr. Smith requires a wheelchair for mobility as a result of these amputations. The extent of Mr. Smith's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Mr. Smith is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4.      Defendant, Circle K Stores, Inc., (hereinafter "Circle K"), is a corporation that is both registered to conduct business and is conducting business within the State of Tennessee sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Circle K Stores, Inc., "operates" and "leases" the Circle K convenience store located at 8000 Winchester Rd., Memphis, Tennessee 38125. 42 U.S.C. § 12182. The Circle K convenience store is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the convenience store is known worldwide for providing quality products and great customer service that offers beverages fit for energizing, satisfying, warming up, cooling down or just plain thirst quenching whether it's for on-the-go, at work or anywhere in-between, supplying everyday necessities from food, snacks, beverages, gas, oil, among a wide assortment of convenience store items to the public, which qualifies Circle K as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5.      All events giving rise to this lawsuit occurred in the Western District of Tennessee and the Defendant is a citizen thereof.

6.      Plaintiff John Smith travels from his home in Muscle Shoals, Alabama to Memphis, Tennessee at least once a year and usually more often than that. Mr. Smith likes to go to Memphis because he likes the city. Mr. Smith enjoys staying at the Peabody Hotel because of its atmosphere and to watch the ducks parade into the lobby. Mr. Smith is something of a creature of habit and likes to go to certain places on a path he is familiar with. In particular, Mr. Smith likes to buy gas at this Circle K because he enjoys the on-the-go convenience that provides quality products and beverages that are energizing, satisfying, and just plain thirst quenching among its wide assortment of convenience store items to the public. Mr. Smith intends to shop at Circle K again like he has been because he enjoys the quality products and great customer service that offers beverages fit

for energizing, satisfying, warming up, cooling down or just plain thirst quenching whether it's for on-the-go, at work or anywhere in-between, supplying everyday necessities from food, snacks, beverages, gas, oil, among a wide assortment of convenience store items that Circle K offers. He will return not only to shop, but also to confirm compliance with the ADA by the Circle K convenience store. Mr. Smith does not know exactly when he will go back to Circle K, because he has not planned out every trip for the rest of his life. Such specific planning is not necessary to invoke the ADA. Mr. Smith definitely intends to return to Circle K in the near future, and looks forward to shopping there in the fall of this year. He will continue to shop there when it has been made ADA compliant.

7.      Because of the barriers described below in paragraph 17 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8.      Plaintiff accordingly, has Article III standing to pursue this case because (1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's convenience store is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the store by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of the store for his full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 15.

## I.    PLAINTIFF'S CLAIMS

**ADA, Title III**

9.     On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

10.     Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a convenience store providing jeans, clothing, shoes and accessories that are inspired by the rich, authentic, all-American spirit, and free spirit and laid-back lifestyle of Southern California to the public. Accordingly, it is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
***(Architectural Barriers)***

**Defendant's Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

11.     Plaintiff is informed and believes based on publicly available information that the Circle K convenience store located at 8000 Winchester Rd., Memphis, Tennessee 38125, was constructed and opened for business in 2003 with alterations and/or improvements in 2006, which includes but is not limited to an entire remodel of the convenience store that cost nearly $91,562.00, among other improvements thereafter.

12.     For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable, because the facility does not comply with the 1991 Standards for Accessible

Design such that the 2010 Standards apply. 28 C.F.R. § 36.406(5)(ii).

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

13.     The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at the Circle K convenience store in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

14.     As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

15.     Plaintiff has definite plans to return to the Circle K convenience store in the future, as described in paragraph 6. Plaintiff will return to Circle K within the next few months not only to shop and enjoy the on-the-go convenience that provides quality products and beverages that are energizing, satisfying, and just plain thirst quenching, among its wide assortment of convenience store items to the public, but also to see if Circle K has repaired the barriers, and changed its practices and procedures. Plaintiff will continue to do so even when the Circle K convenience store is repaired. He will like it even better when it is repaired. Absent remedial action by

Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. As a logical necessity, when architectural barriers and practices have not been remedied, there is a 100% likelihood that plaintiff will suffer the alleged injury again when he returns to the store. Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, his past patronage of the store, and his travels in the vicinity of the store, there exists a genuine threat of imminent future injury. Mr. Smith's intent to return to the store, as pleaded in paragraphs 6 and 15, is plausible.

### Architectural Barriers

16.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

17.     Plaintiff has been throughout the convenience store, from the parking lot to the entrance, from the entrance to and throughout the convenience retail areas; to the check-out service counter, to the restrooms, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 8000 Winchester Rd., Memphis, Tennessee 38125, more commonly known as "Circle K", violates the ADA in particular but not limited to:

### PARKING AREA

a) Circle K provides a parking area for able-bodied individuals, but fails to provide a parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendant:

i.    The purported ADA accessible parking space fails to conform to the ADA Standards for Accessible Design;

ii.    There is not at least one ADA van accessible parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle;

iii.    There is not at least one ADA accessible parking space that has a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iv.    The existing access aisles fail to extend the same length as the adjacent purported accessible space they serve;

v.    The purported ADA parking space and its non-compliant adjacent access aisles fail to be properly marked so as to discourage disabled individuals from parking in them;

vi.    The purported accessible parking space is located furthest from the entrance;

vii.    Circle K fails to maintain the accessible features of the parking area that are required to be readily accessible to and usable by individuals with disabilities;

b)    Circle K provides an accessible route from the parking area to the entrance of the convenience store for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendant:

i.    There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

ii.   The curb ramp on the purported accessible route from the non-compliant ADA parking space towards the entrance has a running slope that exceeds the required slope of 1:12;

iii.  The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a cross slope that exceeds the required slope of 1:48;

iv.   The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance fails to have a landing at the top of the ramp that conforms to the Standards for Accessible Design;

v.    The purported accessible route from the parking area to the entrance fails to provide the required 36 inches of clear floor or ground space;

vi.   The ice bin protrudes more than 4 inches into the accessible route, which obstructs the required 36 inches of clear floor or ground space on the purported accessible route to the entrance;

vii.  There is a trashcan located within the required 36 inches of clear floor or ground space on the purported accessible route to the entrance;

**viii.**   The current practice at Circle K is to locate a trashcan and ice bin within the required 36 inches of clear floor or ground space on the purported accessible route to the entrance;

**ix.**   Circle K fails to maintain the purported accessible route to the entrance of the store so that it is readily accessible to and usable by individuals with disabilities;

## ACCESSIBLE ROUTE

**c)**   Circle K provides an accessible route at the store entrance for able-bodied individuals, but fails to provide an ADA accessible route at the store entrance for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Circle K convenience store:

**i.**   There is a sign at the entrance of the convenience store that obstructs the required 36 inches of clear floor space on the purported accessible route;

**ii.**   Circle K fails to maintain the accessible features of the purported accessible route at the store entrance doors that are required to be readily accessible to and usable by individuals with disabilities;

**d)**   Circle K provides an accessible route to and throughout the shopping convenience aisles throughout the store for able-bodied individuals, but fails to provide an ADA accessible route to and throughout the shopping convenience aisles for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Circle K convenience store:

**i.**   Throughout the accessible route there are signs that obstruct the required 36 inches of clear floor space on the purported accessible route;

ii.    The current practice at Circle K is to maintain signs within the required clear floor or ground space of the purported accessible route;

iii.   Circle K fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the convenience store so that the goods and services are readily accessible to and usable by individuals with disabilities;

iv.    Circle K has ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

v.     Circle K fails to maintain the accessible features of the purported accessible route so that it is readily accessible to and usable by individuals with disabilities;

**CHECK-OUT SERVICE COUNTER**

e)   Circle K provides a check-out counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

A.   The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**   The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.   There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii.   There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii.   There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.**   There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.**   There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E.   Circle K provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F.   Circle K fails to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

## SELF-SERVICE STATIONS

f)   Circle K provides several types of self-service stations for able-bodied individuals, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of Circle K;

g)   Circle K provides a self-servicing Polar Pop beverage counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, including but not limited to the following elements:

A.   The self-servicing Polar Pop beverage counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

    **B.**   The self-servicing Polar Pop beverage counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

        **i.**   There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

        **ii.**   There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

        **iii.**   There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.**   There is no ADA accessible portion of the self-service beverage counter that extends the same depth as the non-accessible portion of the counter;

**D.**   The straws, lids, cups, and other self-serving items on the counter are arranged so that individuals with disabilities cannot fully an independently access the items;

**E.**   Circle K's current practice on maintaining the straws, lids, cups, and other self-serving items stocked for customers segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

F. The beverage dispensers are located at height greater than 48 inches above the finished floor, which denies disabled individuals the opportunity to independently use and access the Polar Pop self-service beverage counter to get a cold fountain drink;

G. The current practice at Circle K is to locate a sign within the required 30 inches x 48 inches of clear floor at the Polar Pop self-service beverage counter;

H. The bottom portion of the counter where cups are located protrudes more than 4 inches into the required clear floor space at the Polar Pop self-service counter;

I. Circle K fails to maintain the accessible features at the Polar Pop self-service beverage counter that are required to be readily accessible to and usable by individuals with disabilities;

h) Circle K provides a self-servicing "Hot Foods" counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, including but not limited to the following elements:

A. The self-servicing Hot-Foods counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**  The self-servicing Hot-Foods counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

    i.  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii.  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.**  There is no ADA accessible portion of the self-service hot-foods counter that extends the same depth as the non-accessible portion of the counter;

**D.**  The condiments, toppings, and other self-serving items on the counter are arranged so that individuals with disabilities cannot fully an independently access the items;

**E.**  Circle K's current practice on maintaining the condiments, toppings, and other self-serving items stocked for customers segregates individuals with

disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

F. The hot foods trays are located at height greater than 48 inches above the finished floor, which denies disabled individuals the opportunity to independently use and access the hot foods self-service beverage counter to get a hot dog, burrito, or other hot food item served at the hot foods self-service counter;

G. The current practice at Circle K is to locate a sign within the required 30 inches x 48 inches of clear floor at the hot foods self-service counter;

H. Circle K fails to maintain the accessible features at the hot foods self-service counter that are required to be readily accessible to and usable by individuals with disabilities;

i) Circle K provides a self-servicing iced tea, milkshake, and toppings counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, including but not limited to the following elements:

A. The self-servicing iced tea, milkshake, and toppings counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The self-servicing iced tea, milkshake, and toppings counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the self-service iced tea, milkshake, and toppings counter that extends the same depth as the non-accessible portion of the counter;

D. The toppings, iced tea dispenser, milkshake maker, straws, lids, and other self-serving items on the counter are arranged so that individuals with disabilities cannot fully an independently access the items;

E. Circle K's current practice on maintaining the toppings, iced tea dispenser, milkshake maker, straws, lids, and other self-serving items stocked for

customers segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

F.   The iced tea dispensers and milkshake maker are located at heights greater than 48 inches above the finished floor, which denies disabled individuals the opportunity to independently use and access the iced tea, toppings, and milkshake self-service counter to get an iced tea or make themselves a milkshake;

G.   Circle K fails to maintain the accessible features at the hot foods self-service counter that are required to be readily accessible to and usable by individuals with disabilities;

j)   Circle K provides a self-servicing coffee and slushy beverage counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, including but not limited to the following elements:

A.   The self-servicing coffee and slushy beverage counters fail to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counters;

B. The self-servicing coffee and slushy beverage counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

    i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the self-service coffee and slushy beverage counters that extends the same depth as the non-accessible portion of the counters;

D. The straws, lids, cups, and other self-serving items on the counter are arranged so that individuals with disabilities cannot fully an independently access the items;

E. Circle K's current practice on maintaining the straws, lids, cups, and other self-serving items stocked for customers segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

F.    The coffee and slushy beverage dispensers are located at height greater than 48 inches above the finished floor, which denies disabled individuals the opportunity to independently use and access the coffee and slushy self-service beverage counters to get a cold slushy, or a warm coffee of their choice;

G.    The current practice at Circle K is to locate a sign within the required 30 inches x 48 inches of clear floor at the coffee and slushy self-service beverage counters;

H.    Circle K fails to maintain the accessible features at the coffee and slushy self-service beverage counters that are required to be readily accessible to and usable by individuals with disabilities;

**RESTROOMS**

k)    The restroom entrance accessible route fails to provide the required passing space for a disabled individual to be afforded the opportunity to enter and/or exit the restroom while another individual is attempting to enter and/or exit;

l)    Circle K provides a non-compliant wheelchair accessible toilet compartment in the restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

i.    The toilet compartment door is not self-closing;

ii.   The toilet compartment door fails to have door pulls located on both sides;

iii. The toilet compartment door locking mechanism requires the use of tight grasping, pinching, or twisting of the wrist, and otherwise requires a force of greater than 5 pounds to operate;

iv. The clear floor space at the toilet compartment door is obstructed by a trashcan and a sign;

v. The current practice at Circle K is to locate a trashcan and a sign in the required clear floor space at the toilet compartment door, so that disabled individuals cannot enter and/or exit the toilet compartment;

vi. The coat hook exceeds the maximum allowed height of 48 inches above the finished floor;

vii. There is not at least one wheelchair accessible toilet compartment that provides a toilet paper dispenser 7-9 inches from the front of the water closet, or otherwise located 12 inches between the top gripping surface of the side wall grab bar;

viii. The side wall grab bar exceeds the maximum allowed distance of 12 inches from the rear wall;

ix. The current practice at Circle K is maintain its purported wheelchair accessible toilet compartment in a condition that prohibits or otherwise discourages disabled individuals from using the restroom;

x. Circle K fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported wheelchair accessible toilet compartment so that the goods and services are readily accessible to and usable by individuals with disabilities;

      **xi.** Circle K has ineffective policies, practices, or procedures that ensures the purported wheelchair accessible toilet compartment is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

      **xii.** Circle K fails to maintain the accessible features of the purported wheelchair accessible toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**m)** Circle K provides a lavatory in the restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

      **i.** Circle K fails to provide the required width of 36 inches at the lavatory sink;

      **ii.** The highest operable part on the paper towel dispenser exceeds the maximum allowed height of 48 inches above the finished floor;

      **iii.** The highest operable part on the hand dryer exceeds the maximum allowed height of 48 inches above the finished floor;

      **iv.** The highest operable part on the soap dispenser exceeds the maximum allowed height of 48 inches above the finished floor;

      **v.** The lavatory sink faucet requires the use of tight grasping, pinching, or twisting of the wrist, and otherwise requires a force of greater than 5 pounds to activate;

      vi. Circle K fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

## DRINKING FOUNTAIN OUTSIDE RESTROOMS

n) Circle K provides a drinking fountain for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

      i. Circle K fails to meet the required level of ADA accessibility by providing at least one drinking fountain that complies with the ADA Standards for Accessible Design;

      ii. There is not at least one drinking fountain that provides the clear floor space centered on the unit for a forward approach with the required knee and toe clearance;

      iii. There is not at least one drinking fountain that provides a spout outlet that measures 36 inches maximum above the finished floor;

      iv. There is not at least one drinking fountain that provides a spout 15 inches minimum from the vertical support and 5 inches maximum from the front edge of the unit;

      v. There is not at least one drinking fountain that provides a spout with a water flow of 4 inches high minimum and located 5 inches maximum from the front of the unit;

18.      To date, the barriers to access and other violations of the ADA still exist and have

not been remedied or altered in such a way as to effectuate compliance with the provisions of the

ADA.

19.      Plaintiff has been obligated to retain the undersigned counsel for the filing and

prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses

paid by the Defendant pursuant to 42 U.S.C. §12205.

20.      Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant

Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily

accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and

closing the facility until the requisite modifications are completed, and to further order the

Defendant to modify its policies, practices, and procedures, to provide equal use of its facility,

services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

## <u>ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers</u>

21.      Plaintiff re-alleges paragraphs 1-20 above.

22.      The ADA, Title III, specifically makes it unlawful to provide individuals with

disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different

or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other

words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b)

requires that goods, services, and accommodations be provided to individuals with disabilities in

"the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a).

Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility

aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

23.     By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

**Defendant's Failed Practices and Lack of Policies Are Discriminatory**

24.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes: "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

25.     Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

26.     As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

27.     Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

28.     Defendant's use of its convenience store, and its practices at the Circle K convenience store located at 8000 Winchester Rd., Memphis, Tennessee 38125, literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the convenience store. Those practices include:

a)     Defendant makes its parking area inaccessible for use by the disabled by failing to provide ADA accessible parking with connecting accessible routes to the entrance of the facility from the parking, which means that Plaintiff is forced to depend on assistance from a third party to get into the facility, whereas the non-disabled conveniently access the establishment without the need of third party assistance;

**b)**       Defendant makes its purported accessible route to entrance inaccessible for use by the disabled by failing to provide an accessible route to the entrance with the required clear floor or ground space, so that disabled individuals are forced to maneuver in all kinds of ways to get around the obstructing barriers and get inside the convenience store, or require assistance from a third party in order to maneuver around the obstructing barriers and get inside the convenience store, whereas the non-disabled are able to conveniently maneuver around any obstruction on the surface of the accessible route to get inside the store;

**c)**       Defendant makes its entire on-the-go convenience experience inaccessible for use by the disabled by failing to provide any level of accessibility whatsoever so that disabled individuals are outright excluded from that same on-the-go convenience experience that non-disabled individuals have when at Circle K;

**d)**       Defendant makes the check-out counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Smith cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**e)**       Point of sale machines at the check-out counter are located so as to be inaccessible, which denies Mr. Smith the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases, though he cannot;

**a)**       Defendant fails to provide an accessible route at the store entrance, which means that Mr. Smith cannot enter and/or exit the Circle K store to shop in the way non-disabled people can. Accordingly, he cannot fully and equally use the convenience store

as the non-disabled can;

b)      Defendant fails to provide an accessible route to and throughout the aisles throughout the store, which means that Mr. Smith cannot travel and move throughout the aisles the way non-disabled people can. Accordingly, he cannot fully and equally use the store as the non-disabled can;

c)      Defendant makes its self-service counters throughout the convenience store inaccessible for use by the disabled by failing to provide either a parallel or forward approach to the counter with the required clear floor space at the self-service counters, which means Plaintiff cannot fully and equally use the self-service counters to independently get drinks, food, and condiment items in the same way the non-disabled do, because the non-disabled have self-service counters they can use to independently get drinks, food, and condiment items they want;

d)      Defendant makes the self-service beverage, food and condiment counters throughout the convenience store inaccessible for use by the handicapped by failing to maintain items on the counter in such a manner that the disabled can independently access the items, which denies Plaintiffs full and equal use as the non-disabled, who can access those items independently;

e)      Defendant makes its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restroom so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restroom;

f)      Defendant's policies, practices, and procedures are conducted without

regard to disabled individuals;

29.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

30.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

31.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its convenience store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of the Circle K convenience store, as described above in detail.

32.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

33.     To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

34.     A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges,

advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's convenience store consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the Circle K convenience store; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

35.    As pled Circle K Stores, Inc., "operates" and "leases" the Circle K convenience store located at 8000 Winchester Rd., Memphis, Tennessee 38125, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

36.    The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

37.    By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

38.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

39.    Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

**40.**     Plaintiff re-alleges paragraphs 1-39 above.

**41.**     42 U.S.C. § 12182(a) provides: *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**42.**     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**43.**     Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); *"the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;"* 42 U.S.C. § 12101(a)(7).

**44.**     To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of*

*discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

45.     For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

46.     In order to provide full and equal enjoyment of its facilities, a public accommodation must consider *how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

47.     Plaintiff, John Smith, was denied full and equal access to the Circle K convenience store. Plaintiff specifically and definitely wants to return to the Defendant's convenience store to enjoy the on-the-go convenience that provides quality products and beverages that are energizing, satisfying, and just plain thirst quenching among its wide assortment of convenience store items to the public. More specifically, Plaintiff wants to be afforded the same level of service that is

offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide accessible parking and route into the convenience store for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to find a parking spot and maneuver into the store, if they can do so at all; Defendant failed to provide an accessible route at the store entrance for disabled individuals, which means that unlike the non-disabled, the disabled must struggle just to get into the store to shop; Defendant failed to provide an accessible route to and throughout the store and convenience aisles for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and convenience aisles, if they can make it at all; Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when shopping at Circle K; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the self-service counters in the store, while the non-disabled can independently access the counters and the services and items provided at the counters; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in the store, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide an accessible restroom for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restroom, clean up after using the restroom, move throughout the restroom, and use the other elements of the restroom; Defendant failed to maintain the accessible features of Circle K that are required to be readily accessible to and usable by Mr. Smith an others similarly situated, such as maintaining the sales and service counters and restroom; and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when shopping at the Circle K convenience store.

48.     Defendant's "use" of its facility constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non- disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

49.     Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Circle K.

50.     Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally to the status of a second-class citizen.

51.     Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

52.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecutionof this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

53.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
***(Failure to design and construct facility for ADA compliance)***

54.     Plaintiff re-alleges paragraphs 1 – 53 above.

55.     42 U.S.C. § 12183(a)(1) provides: *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

56.     Defendant, as the "owner" and "operator" of the Circle K convenience store was directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

57.     Defendant was and is required to design and construct the Circle K convenience store to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct *its convenience store to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its convenience store in compliance

with the ADA during planned alterations as described throughout this Complaint.

58.     According to Defendant's own publicly available information, Defendant chose to design its convenience store in a way that is not ADA Title III compliant whatsoever. Defendant literally re-designed and re-modeled its convenience store without any regard to the disabled. Defendant's systematic design of its store fails to afford disabled individuals the same convenient experience that is afforded to individuals without disabilities.

59.     To date, the Defendant's discriminating actions continue.

60.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

61.     Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, John Smith demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1.      That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.      That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.      That the Court enter an order, in accordance with Count Two, directing the

Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.    That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Circle K convenience store experience and to the use of the Circle K facility, and further order Defendant to maintain the required accessible features at the convenience store so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.    That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.    That the Court enjoin Defendant to remediate the Circle K convenience store to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

7.    That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8.    That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 14th Day of July, 2017.

/s *Bradley D. McAdory*
**BRADLEY D. MCADORY**
**BPR # TN-018112**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

/s *L. Landis Sexton*
**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ *Tracy G. BirdSong*
**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 14th day of July, 2017 to the following:


**CIRCLE K STORES, INC.,**
c/o Corporation Service Company
attn.: Registered Agent
2908 Poston Avenue
Nashville, Tennessee 37203-1312


/s *L. Landis Sexton*
**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*